IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: : | |
| : | CASE NO. 1:13-bk-6313-RNO |
| DAVID MCJONATHAN : | |
| : | CHAPTER 7 |
| Debtor : | |
| ******************************* : | ******************************* |
| : | |
| DAVID MCJONATHAN : | |
| : | |
| Plaintiff : | |
| : | |
| v. : | |
| : | |
| THE WAYNE BUILDING COMPANY, : | |
| INC., and CRAIG MAHRLE : | |
| : | |
| Defendants : | ADVERSARY NO. 1:14-ap-00022-RNO |

**OPINION**[1]

Pending before the Court are two Motions for Summary Judgment. The first is Plaintiff, David McJonathan's, ("Debtor") Motion for Summary Judgment which was filed on October 8, 2014 ("Debtor's Motion"). The second is Defendants, The Wayne Building Company, Inc. and Craig Mahrle's, (collectively "Wayne") Cross Motion for Summary Judgment which was filed *pro se* on November 6, 2014 ("Wayne Motion"). For the reasons stated below, both Motions are denied.

**I.    Jurisdiction**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G), and (O).

---

[1]    Drafted with the assistance of William J. Schumacher, Law Clerk.

## II. Facts and Procedural History

A voluntary petition under Chapter 7 of the Bankruptcy Code was filed on December 10, 2013, by the Debtor. The Debtor filed his schedules of assets and liabilities. Schedules A through J and Summary of Schedules, December 24, 2013, ECF No. 9 [hereinafter "ECF No. 9"]. Included on Schedule D (Creditors Holding Secured Claims) are three entries for The Wayne Building Company. ECF No. 9.

On December 11, 2013, Suggestions of Bankruptcy were filed in the Court of Common Pleas of the 39th Judicial District of Pennsylvania, Franklin County Bench. Plaintiff's Motion for Summary Judgment, ¶ 7 and Exhibit A, October 10, 2014, ECF No. 39 [hereinafter "Debtor's Motion"]. Debtor sent a letter to Wayne on December 11, 2013, informing Wayne of Debtor's entry into bankruptcy. Debtor's Motion, ¶ 8, Exhibit B. A sheriff's sale of Debtor's property scheduled for December 19, 2013, to satisfy judgments held by Wayne was stayed by the filing of the Debtor's bankruptcy petition. Complaint for Damages for the Willful and Deliberate Violation of the Automatic Stay Provisions of 11 U.S.C. § 362, ¶ 8, January 22, 2014, ECF No. 1 [hereinafter "Complaint"]. Debtor also filed motions to avoid Wayne's judicial liens. Complaint at ¶ 9.

A further review of the bankruptcy docket in the lead bankruptcy case, 1-13-bk-06313-RNO, shows that on March 4, 2014, the Trustee filed his report indicating that the 11 U.S.C. § 341[2] Meeting of Creditors had been held. The Trustee also filed a Report of No Distribution on April 9, 2014.

---

2     Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

The present Adversary Proceeding was commenced by the Debtor on January 22, 2014, pursuant to § 362(k) for an alleged violation of the automatic stay. The action was commenced by a single count Complaint for Damages for the Willful and Deliberate Violation of the Automatic Stay ("Complaint"), which contains seventeen numbered paragraphs. The Complaint states that Defendant, Wayne Building Company, Inc., ("Wayne Building") was listed on the Debtor's bankruptcy petition as a secured creditor and that Defendant, Craig Mahrle, ("Mahrle") has been added as a co-creditor in other proceedings within the bankruptcy case. Complaint, ¶¶ 4-5.

In sum, the Complaint alleges that on January 9, 2014, approximately a month after the Debtor filed his bankruptcy petition on December 10, 2013, Wayne sought to collect a pre-petition debt by way of a collection letter in violation of § 362(a). Complaint, at ¶¶ 15 & 17. Further, the Complaint alleges that the letter requested storage fees be paid, commencing on January 15, 2014, for the retention and preservation of the Debtor's personal property in Wayne's care and control. Complaint, at ¶ 10. The Complaint seeks the return of all of the Debtor's personal property in the care and control of Wayne, actual damages of no less than $1,000 for compensatory loss and no less than $3,250 for attorney's fees and costs. The Debtor also seeks punitive damages in the amount of $5,000.

Wayne duly answered the Complaint. First, Wayne admits in Respondent's Answer to the Complaint, filed on February 24, 2014, that Wayne Building and Mahrle are co-creditors of the Debtor. Respondent's Answer to Complaint for Damages for the Willful and Deliberate Violation of the Automatic Stay Provision of 11 U.S.C. § 362, ¶ 1, February 24, 2014, ECF No. 7 [hereinafter "Answer"]. Second, Wayne admits that it received a letter on December 11, 2013,

3

from Debtor's counsel informing Wayne of Debtor's entry into bankruptcy. Defendant's Response to Plaintiff's Motion for Summary Judgment, ¶ 1, October 23, 2014, ECF No. 43 [hereinafter "Defendant's Response"]. Third, Wayne admits that it sent a collection letter requesting payment of storage fees ("Wayne Letter") to the Debtor on January 9, 2014. Answer, at ¶ 4. However, Wayne denies that the storage fees requested were on account of a pre-petition debt. Id. at ¶ 7. Instead, Wayne alleges that the storage fees were for the continuing storage of the Debtor's possessions post-petition and therefore no violation of the automatic stay occurred. Id. at ¶ 8.

On October 8, 2014, the Debtor moved for summary judgment. The Debtor filed his Statement of Undisputed Facts and Wayne filed their response thereto. Briefs have been submitted in support of and opposition to the Debtor's Motion. On November 6, 2014, Wayne filed a cross motion for summary judgment. Briefs have been submitted in support of and in opposition to the Wayne Motion. Both Motions are now ripe for decision.

**III. Discussion**

    **A.    Standard to Decide Motions for Summary Judgment Under F.R.B.P. 7056**

Federal Rule of Bankruptcy Procedure 7056 incorporates, and makes applicable to bankruptcy adversary proceedings, Rule 56 of the Federal Rules of Civil Procedure ("F.R.C.P."). Pursuant to F.R.C.P. 56(a), the movant has the burden to prove that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby Inc.*, 477 U.S.

4

242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the movant satisfies its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *In re LandSource Communities Dev. LLC*, 485 B.R. 310, 314 (Bankr. D.Del. 2013) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Instead, the nonmoving party is required to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. Throughout this analysis, the Court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor. *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 276 (3d Cir. 2001).

This standard does not change when the parties file cross motions for summary judgment. *Clevenger v. First Option Health Plan of N.J.*, 208 F.Supp.2d 463, 468 (D.N.J. 2002) (citing *Weissman v. U.S. Postal Serv.*, 19 F.Supp.2d 254 (D.N.J. 1998)). "When ruling on cross-motions for summary judgment, the court must consider the motions independently . . . and view the evidence on each motion in the light most favorable to the party opposing the motion." *Clevenger*, 208 F.Supp.2d at 468–69 (internal citations omitted) (citing *Williams v. Phila. Hous. Auth.*, 834 F.Supp. 794, 797 (E.D.Pa. 1993); *Matsushita*, 475 U.S. at 587).

B.   **Genuine Issues of Material Fact Remain**

I note that the parties did not submit any affidavits for consideration pursuant to F.R.B.P. 7056. The only discovery material submitted was a one page exhibit attached to the Wayne Motion, which contains the Debtor's answer to only one of Wayne's interrogatories.

The key evidence offered by the Debtor that Wayne allegedly violated the automatic stay is the Wayne Letter. On January 9, 2014, after the Debtor filed his bankruptcy petition, Wayne

5

Case 1:14-ap-00022-RNO    Doc 60    Filed 02/11/15    Entered 02/11/15 10:08:50    Desc
Main Document      Page 5 of 14

sent the Debtor a letter seeking storage fees to be paid beginning on January 15, 2014, or the earliest date allowed "by such law." Complaint, at ¶ 10 and Exhibit A; Answer, at ¶ 4. The letter from Wayne states:

> Dear Mr. McJonathan:
>
> As you know, when you moved out of 94 West Main Street, Apartment 4A, and out of your office on the second floor of the same building, you left a number of items behind that were not included in the sheriff's sales. We continue to store these items for you.
>
> This letter is to advise you that as of January 15, 2014, the storage fee for the continued storage of these items is $200.00 per month for the apartment contents, and $200.00 per month for the office contents. (In the event that applicable law requires a longer notice period, the "as of" date shall be the earliest allowed by such law.)
>
> Please send payment to the above address.
>
> Thank you for your prompt attention to this matter.

Complaint, Exhibit A. Wayne does not dispute that it knew of the Debtor's bankruptcy petition, which was filed on December 10, 2013, when writing to the Debtor. Defendant's Response, ¶ 1.

Although Wayne admits it knew of the Debtor's bankruptcy petition prior to sending the Wayne Letter, genuine disputes of material fact remain. Thus, this matter shall proceed in due course to trial.

### i. Claims exist whenever there is an enforceable obligation

The automatic stay under § 362(a) is triggered by the filing of a bankruptcy petition. Section 362 provides, among other provisions, that "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case . . ." outside the course of the bankruptcy proceeding is stayed during the bankruptcy case. 11 U.S.C. § 362(a)(6). The stay

6

Case 1:14-ap-00022-RNO    Doc 60    Filed 02/11/15    Entered 02/11/15 10:08:50    Desc
Main Document    Page 6 of 14

applies only to claims arising pre-petition, not to claims which arise post-petition. *In re Grossman's Inc.*, 607 F.3d 114, 122 (3d Cir. 2010). Further, the automatic stay "is one of the fundamental debtor protections provided by bankruptcy laws." *In re Grossman's Inc.*, 607 F.3d at 122.

It is not contested that Wayne filed a proof of claim for a judgment lien arising pre-petition in the underlying bankruptcy case 1-13-bk-06313-RNO in the amount of $15,980.50, of which $15,080.50 is secured by the personal property of the Debtor (business inventory, equipment, fixtures). The proof of claim was filed on January 7, 2014, two days prior to the mailing of the Wayne Letter.

However, the Debtor and Wayne dispute when Wayne's claim for storage fees arose. Crucial to my determination of whether or not Wayne violated the automatic stay is if Wayne had a "claim" against the Debtor for the $400 per month alleged storage fees.

Under the Bankruptcy Code, "debt" means "liability on a claim." 11 U.S.C. § 101(12). "Claim" then includes any "right to payment." 11 U.S.C. § 101(5)(A); *F.C.C. v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 302, 123 S.Ct. 832, 839, 154 L.Ed.2d 863 (2003). However, the Bankruptcy Code defines "claim" broadly to mean:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). The Third Circuit in *Rodriguez* determined that "right to payment" in the definition of "claim" meant "nothing more nor less than an enforceable obligation." *In re*

7

*Rodriguez*, 629 F.3d 136, 139 (3d Cir. 2010), citing *Johnson v. Home State Bank,* 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); *see also FCC*, 537 U.S. at 302. Congress intended this language to be construed broadly. *In re Rodriguez*, 629 F.3d at 139, citing *Johnson*, 501 U.S. at 83; *see also FCC*, 537 U.S. at 302-03. Thus, the Third Circuit held that a claim was an "enforceable obligation." *In re Rodriguez*, 629 F.3d at 139.

The court's decision in *Affeldt* is also instructive as to the breadth of a "claim." The court looked at whether an obligation "to pay post-petition assessments arising out of a pre-petition contract is discharged because it is a contingent, unmatured liability that falls within the broad definition of claim." *In re Affeldt*, 164 B.R. 628, 630 (Bankr. D.Minn. 1994) subsequently aff'd, 60 F.3d 1292 (8th Cir. 1995). The court noted that the key was when the debtor became personally obligated to pay the creditor, regardless of when the actual payment was due. *In re Affeldt*, 164 B.R. at 631. In *Affeldt*, the court found that the creditor held a contingent, unmatured claim under § 101(5) and that the debtor's obligation to pay post-petition assessments was discharged in his bankruptcy. *Id.* at 631. It was irrelevant when the actual payment came due. *Id.* at 630. Thus, the focus should be on whether a claim exists pre-petition, not when the claim accrues. *Grossman*, 607 F.3d at 121.

Conversely, Wayne cites *In re Hall* for the proposition that a contingent post-petition liability is not a claim that violates the automatic stay. Wayne Motion. The court in *Hall* looked to when the obligation to pay condominium assessments accrued. *In re Hall*, 454 B.R. 230, 241 (Bankr. N.D.Ga. 2011). *Hall* reasoned that the creditor's right to payment did not exist at the time of the debtor's bankruptcy; instead the obligation was continuous under Georgia law. *In re Hall*, 454 B.R. at 241. The court found the obligation was continuous because a homeowner's

8

continuing interest in property is subject to the declaration of covenants, which includes the power of an association to assess for common expenses. *Id.* Importantly, a continuous obligation runs with the land, not the previous owner. *Id.*

Utilizing the *Piper* test from the Eleventh Circuit, *Hall* required that "(1) a pre-petition relationship exists, such as contact, exposure, privity, or impact between the claimant and the debtor; and (2) the basis for liability is the debtor's pre-petition conduct." *Id.* at 236 (citing *Epstein v. Official Comm. of Unsecured Creditors of Piper Aircraft, Corp. (In re Piper Aircraft, Corp.)*, 58 F.3d 1573, 1577 (11th Cir. 1995)). In *Hall*, the debtor's conduct at issue was the default on post-petition condominium assessments, which were assessed after the debtor filed for bankruptcy. The court therefore held that because the assessments were continuous post-petition assessments and because the conduct of the debtor occurred after the filing for bankruptcy, the assessments were not claims and the creditor was not subject to the automatic stay.

I find that *Hall* is neither persuasive, nor binding on this Court. The court in *Hall* was analyzing condominium assessments, which the court determined run with the land as opposed to this case which involves storage fees for personal property. Further, even if *Hall* is applicable, it essentially found that if the conduct had occurred pre-petition, the creditor's conduct would have been a violation of the automatic stay. The issue here is whether the conduct or obligation arose pre-petition or post-petition.

In the present case, it is clear that Wayne had a secured claim for $15,080.50 and an unsecured claim for $900. If the Wayne Letter was an attempt to collect on Wayne's proof of claim filed in the Debtor's bankruptcy case, it was a violation of the stay under § 362(a). No evidence beyond mere allegations has been offered to show that the Wayne Letter was an

9

Case 1:14-ap-00022-RNO    Doc 60    Filed 02/11/15    Entered 02/11/15 10:08:50    Desc
Main Document      Page 9 of 14

attempt to collect pre-petition debts from the Debtor under the veil of storage fees. Thus, a genuine dispute of material fact exists on the Debtor's allegation.

Alternatively, if, as Wayne alleges, the Wayne Letter was purely an attempt to collect storage fees for holding the Debtor's personal property, which Wayne asserts is permissible under "Pennsylvania law," it is unclear when Wayne's enforceable obligation against the Debtor arose – either pre- or post-petition. I do find that Wayne and the Debtor had a pre-petition relationship, so even under the test in *Hall*, the claim may have arisen from pre-petition conduct. However, I cannot determine when the claim arose because there are genuine disputes of material facts as to whether or not there is a claim, and when any claim arose.

Thus, whether or not Wayne has a claim, and if there is a claim, when the claim arose, cannot be determined on the present state of the record.

      ii.      **Under the 2012 Amendments to the Landlord and Tenant Act of 1951 ("LTA") a genuine dispute of material fact exists**

Wayne alleges that pursuant to "Pennsylvania law, Defendant [Wayne] is entitled to rent for storing Plaintiff's [Debtor's] possessions." *Wayne Motion*, ¶ 13. I give minimal weight to Wayne's assertion that the claim for rent from storing Debtor's possessions arose post-petition because Wayne fails to identify any case law or statute under which a claim for storage costs may arise. It has been held that a landlord has a duty to mitigate damages under Pennsylvania law. *In re Paskorz*, 284 B.R. 429, 431 (Bankr. W.D.Pa. 2002); *see also*, *In re New York City Shoes, Inc.*, 86 B.R. 420 (Bankr. E.D.Pa. 1988). The court in *New York City Shoes* found that the Pennsylvania Supreme Court would treat a real estate lease like any other contract and would require a lessor to mitigate damages that result from a breach of a lease. *In re New York City Shoes, Inc.*, 86 B.R. at 424. Under that analysis, a lessor is not entitled to recover damages it

10

could have avoided with reasonable efforts. *In re Paskorz*, 284 B.R. at 431.

However, in the instance of a commercial lease, the Pennsylvania Supreme Court held that a non-breaching landlord has no duty to mitigate damages where the tenant abandoned the property before the end of the lease term. *Stonehedge Square Ltd. P'ship v. Movie Merchants, Inc.*, 552 Pa. 412, 417, 715 A.2d 1082, 1084 (1998). The record here does not reveal the expiration date of any lease term between Wayne and the Debtor.

In this case, no case law was provided for Wayne's authority to charge storage fees and the only statutory basis given for the assessment of storage fees was the Debtor's surmise that the Wayne Letter was an attempt to assess storage fees under 68 Pa. Cons. Stat. § 250.505a of the LTA. Nor was any evidence proffered as to whether or not Wayne mitigated its damages or if Wayne was even obligated to mitigate its damages. However, to even determine if and when Wayne's alleged claim arose, the LTA must be examined.

First, the LTA applies to persons, which means natural persons, copartnerships, associations, private and public corporations, authorities, fiduciaries, the United States and any other country and their respective governmental agencies, this Commonwealth and any other state and their respective political subdivisions and agencies. 68 Pa. Cons. Stat. § 250.102. Thus, in this case the Debtor qualifies as a "person" under the LTA.

Second, the LTA applies to both residential and commercial leases. *See e.g.*, *Stonehedge Square Ltd. P'ship*, 552 Pa. at 418 (In a case involving a commercial lease, the court found that the LTA did not modify landlord's duty to mitigate damages); *Cambria-Stoltz Enterprises v. TNT Investments*, 747 A.2d 947, 952 (2000) (court found that statute of frauds provision of 68 P.S. § 250.203 of the LTA protected only non-breaching party in a commercial lease).

11

Third, the section and version of the LTA that is at issue in this matter is 68 P.S. § 250.505a, as amended September 4, 2012 ("2012 LTA"). Section 250.505a of the LTA was subsequently modified on December 22, 2014, but those amendments are not applicable to this matter because the Wayne Letter was sent on January 9, 2013.

Fourth, under 2012 LTA § 250.505a, on the relinquishment of the real property by the tenant, the tenant shall remove all items of personal property. 68 Pa. Cons. Stat. § 250.505a(a) (amended September 4, 2012). A tenant shall be deemed to have relinquished possession of the premises upon any of the following:

> (1) Execution of an order of possession in favor of the landlord.
> (2) If the tenant has physically vacated the premises, removal of substantially all personal property and the providing of a forwarding address or written notice stating that the tenant has vacated the premises.

68 Pa. Cons. Stat. § 250.505a(a) (amended September 4, 2012). In this case, Wayne alleges that "pursuant to Pennsylvania law" Wayne is entitled to rent or storage fees for storing Debtor's personal property after the Debtor had vacated the property and Wayne had provided ten days' notice, with rent accruing on the eleventh day after the notice was sent. *See*, Wayne Motion.

However, under the 2012 LTA in effect at the time of Wayne's Letter, which Wayne presumably is asserting for "Pennsylvania law," when the right to costs for storage accrues is largely determined by the lease between the tenant and landlord. 68 Pa. Cons. Stat. § 250.505a (amended September 4, 2012). Additionally, the 2012 LTA does not appear to provide statutory authority for a landlord to charge storage fees except in limited circumstances. *Id.* Only if, within the ten day period following the tenant's receipt of the landlord's notice, the tenant notifies the landlord of his intent to retrieve the personal property are storage costs allowed

12

under the 2012 LTA. *Id.* at § 250.505a(c). If thirty days after receiving the tenant's notice of his intention to retrieve the personal property, the tenant has not retrieved his personal property, the landlord may dispose of the tenant's property. *Id.* at § 250.505a(e). If the property is sold and the proceeds exceed the outstanding obligations owed to the landlord, the proceeds shall be forwarded to the tenant. *Id.*

I cannot determine that Wayne is entitled to judgment as a matter of law because the 2012 LTA does not appear to entitle Wayne to charge the Debtor ongoing storage costs. Neither party has provided a written lease containing a provision addressing Wayne's right to charge storage fees. Thus, the record does not demonstrate that Wayne is entitled to storage costs under case law, a statute, or a lease in these circumstances.

This Court should have the opportunity to view the lease(s) between the Debtor and Wayne. I also conclude that testimony or other evidence is required as to the circumstances of the Debtor's departure from the property at dispute before I can make a finding of when, or even if, a claim for storage fees arose under any case law or statute. There is also a genuine dispute of material fact as to when the Debtor last paid rent to Wayne. Neither the Debtor's Motion nor the Wayne Motion meet the requirements for summary judgment.

13

## IV. Conclusion

For all the above reasons, both the Debtor's Motion and the Wayne Motion are denied.

A disposition order providing for the denial of both Motions will be entered.

By the Court,

*[signature]*

Date: February 11, 2015

Robert N. Opel, II, Bankruptcy Judge

(BI)

14

Case 1:14-ap-00022-RNO    Doc 60    Filed 02/11/15    Entered 02/11/15 10:08:50    Desc
Main Document    Page 14 of 14